**Barry Hobson**
9016 Ruby Lockhart Blvd
Lanham, MD 20706

    *Plaintiff*

v.

**Transit Employees Health & Welfare**
**Fund, LLC,** *at el*

Serve:      **Tonya Jackson**
              Registered Agent
              TEHW, LLC
              13325 Fort Washington Rd
              Ft Washington, MD 20744

and

**Metropolitan Life Insurance Company**
**Maryland Insurance Commissioner**
Maryland Insurance Division
200 St Paul Place, Ste 2700
Baltimore, MD 21202

and

**Bertha Villatoro**
1215 East West Hwy
Apartment 209
Silver Spring, MD 20910

      *Defendant(s).*

| | |
|---|---|
| * | **IN THE** |
| * | |
| * | **CIRCUIT COURT** |
| * | |
| * | **FOR** |
| * | |
| * | **PRINCE GEORGE'S COUNTY** |
| * | |
| * | **CASE NO: C-16-CV-24-004974** |
| * | |
| * | |
| * | |
| * | |
| * | |
| * | |
| * | **JURY TRIAL DEMANDED** |
| * | |
| * | |
| * | |
| * | |
| * | *Invasion of Privacy |
| * | *Breach of Contract |
| * | *Malicious Prosecution |
| * | *Negligence |
| * | *Negligence *Per Se* |
| * | *Unfair Trade Practices |
| * | *   Americans with Disabilities Act Violation |
| * | *Rehabilitation Act of 1973 Violation |

## FIRST AMENDED COMPLAINT

Plaintiff, pro se, ("Hobson" or "Plaintiff"), brings the following complaint against Defendants Trans it Employees Health and Welfare Fund, LLC (herein after "TEHW" or the "Fund"), Metropolitan Life Insurance Company Incorporated (herein after "MetLife or and, collectively with the Fund, and Villatoro, "Defendants"), Bertha Villatoro ("Villatoro," and, collectively with the Fund, and MetLife, "Defendants").

## INTRODUCTION

1.      This is a case about TEHW, MetLife, and Bertha Villatoro's failure to respect the privacy rights of disabled individual with Human Immunodeficiency Virus (HIV) coupled with TEHW's further harm to Plaintiff through malicious prosecution.

2.      This action also involves Defendants' willful violation of Title I of the Americans with Disabilities Act of 1990, as amended by the American with Disabilities Act of 2008 by discriminating against Plaintiff with respect to breach of confidentiality.

3.      This action also involves Defendant's violation of the Rehabilitation Act of 1973, U.S.C. § 701, et seq. for illegally and improperly releasing Plaintiff's confidential medical information in the course of his employment.

4.      HIV is the virus that causes AIDS.

5.      Despite the fact that AIDS was identified more than 40 years ago, people living with HIV and AIDS still face extreme stigma. In fact, stigma is widely recognized as a driver of the AIDS epidemic. See The People Living with AIDS Stigma Index, at http://www.stigmaindex.org/. To ensure people feel safe to come forward to be tested and

treated for HIV, most states have enacted laws that protect the confidentiality of people's HIV-related information.

6. Defendants' actions, as described below, carelessly, recklessly, negligently, and impermissibly revealed HIV-related information of Plaintiff to other co-workers, WMATA officials, TEHW Board of Directors, ATU Local 689 Board Members, ATU Local 689 Members, family of ATU Local 689 members, Plaintiff's friends, and complete strangers prior to June 1, 2023. This action seeks redress against Defendants for their unlawful exposure of Plaintiff's confidential HIV-related information.

7. As shown in the photograph below, the covenant(s) in the MetLife Insurance application, remitted to TEHW, plainly states that Plaintiff's information relating to HIV test results (PHI) would only be disclosed as permitted by applicable law — as well as other confidentially provisions

8. Since HIV and AIDS first entered the public consciousness as an ongoing public health crisis in the early 1980s, people living with HIV and AIDS have been subjected to social stigma and discrimination.

9. HIV related stigma is still widely prevalent, and such stigma can have a debilitating effect on people living with HIV. The People Living with HIV Stigma Index is an international research project spearheaded by the Global Network of People Living with HIV launched in 2008 to measure and detect changing trends in relation to stigma and discrimination experienced by people living with HIV. *See* The People Living with HIV Stigma Index, at http://www.stigmaindex.org/. While the U.S. study is ongoing, the data from Michigan reveals sobering levels of HIV-related stigma in the daily lives of Americans with HIV. For example,

nearly 73% of participants experienced at least 1 of 11 forms of exclusion, stigma or discrimination, including gossip, rejection by family or friends, exclusion from religious organizations, or verbal and/or physical harassment. See UNIFIED-HIV Health and Beyond, The U.S. People Living with HIV Stigma Index: Michigan, Wave I Findings, 2014-2016, at 30.

10.     As recently as 2012, more than half of Americans still said they felt some discomfort with people with HIV/AIDS. See Henry J. Kaiser Family Foundation, The Washington Post/Henry J. Kaiser Family Foundation 2012 Survey of Americans on HIV/AIDS (July 2012)[1]. In a national survey, 52 percent of respondents indicated they would be less than "very comfortable" working with someone with HIV/AIDS. The same survey found many Americans with misconceptions about how HIV is transmitted.

11.     A survey conducted in 2015 by Kaiser Family Foundation found that 75% of survey respondents from Georgia believed that people living with HIV suffer from a lot or some stigma and discrimination. See Henry J. Kaiser Family Foundation, The Public Attitudes and Knowledge about HIV/AIDS in Georgia (November 2015)[2]. Only 20% of respondents said that they would be very comfortable personally with having their food prepared by someone who has HIV, and only 30% said they would be very comfortable having a roommate who has HIV. Id. Only 8% of individuals said that they would be very or somewhat comfortable being in a sexual relationship with someone who has HIV.

---

[1] Available at http://kff.org/hivaids/poll-finding/2012-survey-of-americans-on-hivaids.

[2] Available at http://www.kff.org/hivaids/poll-finding/public-attitudes-and-knowledge-abouthivaids-in-georgia/.

12.     In addition, people living with HIV often are not able to turn to their families for support due to the associated stigma. The same Georgia survey found that 91% of Georgians agree that having the support of family and loved ones is "very important" to the health and well-being of people with HIV. Yet, comparatively only 38% say most people with HIV in the state get that support (44% say most do not and 18% don't know).

# AUTHORIZATION

This Authorization is in connection with an enrollment in group insurance and information required for underwriting and claim purposes for the proposed insured(s)("employee", spouse, and any other person(s) named below). Underwriting means classification of individuals for determination of insurability and / or rates, based upon physician health reports, prescription drug history, laboratory test results, and other factors. Notwithstanding any prior restriction placed on information, records or data by a proposed insured, each proposed insured hereby authorizes:

- Any medical practitioner, facility or related entity; any insurer; MIB, Group Inc. ("MIB"); any employer; any group policyholder, contract holder or benefit plan administrator; any pharmacy or pharmacy related service organization; any consumer reporting agency; or any government agency to give Metropolitan Life Insurance Company ("MetLife") or any third party acting on MetLife's behalf in this regard:
  - personal information and data about the proposed insured including employment and occupational information;
  - medical information, records and data about the proposed insured including information, records and data about drugs prescribed, medical test results and sexually transmitted diseases;
  - information, records and data about the proposed insured related to alcohol and drug abuse and treatment, including information and data records and data related to alcohol and drug abuse protected by Federal Regulations 42 CFR part 2;
  - information, records and data about the proposed insured relating to Acquired Immunodeficiency Syndrome (AIDS) or AIDS related conditions including, where permitted by applicable law, Human Immunodeficiency Virus (HIV) test results;
  - information, records and data about the proposed insured relating to mental illness, except psychotherapy notes; and
  - motor vehicle reports.

Note to All Health Care Providers: The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. 'Genetic information' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

Expiration, Revocation and Refusal to Sign: This authorization will expire 24 months from the date on this form or sooner if prescribed by law. The proposed insured may revoke this authorization at any time. To revoke the authorization, the proposed insured must write to MetLife at P.O. Box 14069, Lexington, KY 40512-4069, and inform MetLife that this Authorization is revoked. Any action taken before MetLife receives the proposed insured's revocation will be valid. Revocation may be the basis for denying coverage or benefits. If the proposed insured does not sign this Authorization, that person's enrollment for group insurance cannot be processed.

By signing below, each proposed insured acknowledges his or her understanding that:

- All or part of the information, records and data that MetLife receives pursuant to this authorization may be disclosed to MIB. Such information may also be disclosed to and used by any reinsurer, employee, affiliate or independent contractor who performs a business service for MetLife on the insurance applied for or on existing insurance with MetLife, your employer for a plan administration purpose, or disclosed as otherwise required or permitted by applicable laws.
- Medical information, records and data that may have been subject to federal and state laws or regulations, including federal rules issued by Health and Human Services, setting forth standards for the use, maintenance and disclosure of such information by health care providers and health plans and records and data related to alcohol and drug abuse protected by Federal Regulations 42 CFR part 2, once disclosed to MetLife or upon redisclosure by MetLife, may no longer be covered by those laws or regulations.
- Information relating to HIV test results will only be disclosed as permitted by applicable law.
- Information obtained pursuant to this authorization about a proposed insured may be used, to the extent permitted by applicable law, to determine the insurability of other family members.
- A photocopy of this form is as valid as the original form. Each proposed insured (or his/her authorized representative) has a right to receive a copy of this form.
- I authorize MetLife, or its reinsurers, to make a brief report of my personal health information to MIB.

| Sign Here ▶ | Signature of Employee | | Date Signed (MM/DD/YYYY) 11/02/2018 |
| | Print Name | State of Birth NS | Country of Birth Hinds |
| Sign Here ▶ | Signature of Spouse | | Date Signed (MM/DD/YYYY) 11/1/18 |
| | Print Name | State of Birth 10 C | Country of Birth US |

13.   To ensure that people feel safe to come forward to be tested and treated for HIV, most states have enacted laws that protect the confidentiality of a person's HIV-related information.

14.     Thirty-nine states have either HIV-specific privacy statutes or general privacy provisions that expressly mentioned HIV. The remaining states may protect its confidentiality under other statutes or provisions. *See* Electronic Privacy Information Center, Lawrence O. Gostin, *Legislative Survey of State Confidentiality Laws, with Specific Emphasis on HIV and Immunization*, available at https://epic.org/privacy/medical/cdc_survey.html.

15.     Federal laws, such as the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), were also enacted in recognition of the important privacy rights that individuals should expect to have over their sensitive medical information.

16.     Transit Employees Health and Welfare Fund, LLC is an ERISA and HIPAA "Covered Entity" with an obligation and privacy promise to protect the private health information of the individual they service as described in attached **Exhibit 1**.

17.     MetLife, an insurer, also holds an obligation and privacy promise to protect the private health information of the individual they service as described in attached **Exhibit 2.**

18.     This is an action pursuant to the State of Maryland common law tort(s), alleging Defendants' intentional and harmful acts against Plaintiff by bringing public shame and embarrassment to Plaintiff by granting unreasonable publicity to Plaintiff's private life, breaching its contract with Plaintiff to protect of the same, and imputing malicious criminal prosecution against Plaintiff intended to further harm Plaintiff's well-being.

19.     Defendants, collectively, inflicted undue irreparable harm upon Plaintiff's health, finances, reputation, background, and other possible rights as a citizen in the State of Maryland. Specifically, Defendants, through and by their agents, directed animus towards Plaintiff violating ordinary decency by invading and disclosing Plaintiff's private health information to a public

audience of private citizens (>50) before June 1, 2023 with no authorization from Plaintiff nor a permissible business purpose.

20.     Further, Defendant, THEW, through its officers, directed animus towards Plaintiff further violating ordinary decency by fabricating probable cause and maliciously initiating prosecution against Plaintiff fueled by mistruths ushered by Villatoro.

### PARTIES AND JURISDICTION

21.     Barry Hobson, Plaintiff, is an adult resident of Prince George County, State of Maryland

22.     Defendant Transit Employees Health and Welfare Fund, LLC is a Limited Liability Corporation registered, located and operating continuously in Prince George's County, Maryland at all times relevant to this complaint[3].

23.     The Plaintiff is informed and believes, and alleges thereon that Defendant, Metropolitan Life Insurance Company Incorporated (MetLife), is a business entity, having its principal place of business at 200 Park Avenue New York, New York 10166[4].

24.     Defendant Bertha Villatoro is an adult resident of Montgomery County, State of Maryland.

25.     Plaintiff was a recipient of employer-sponsored insurance (health, dental, vision, prescription coverage, and life) administered by TEHW from January 1, 2018 until September 30, 2021 located in Prince George's County Maryland.

---

[3] TEHW is a welfare benefit plan within the meaning of Section 3(1) and (3) of ERISA, 29 U.S.C. §1002(1)
[4] MetLife is a business entity headquartered in the state of New York authorized to operate in the State of Maryland as a registered "foreign Corporation". MetLife, at all times covered under this action was headquartered in the state of New York.

26. This court has jurisdiction over the Defendant pursuant an Annotated Code of Maryland, Courts and Judicial Proceedings Article, §§6-102, and 6-103. Further this court has subject matter jurisdiction under the common law of Maryland and Md. Code Ann., Courts and Judicial Proceedings Article, §1-105.

## ADMINISTRTIVE PROCEDURES

27. More than 30 days prior to the institution of this action, Plaintiff filed an administrative complaint with the U.S. Department of Health and Human Services (HHS), Office of Civil Rights against Defendant Transit Employees Health and Welfare, LLC and Bertha Villatoro alleging violations of Plaintiff's privacy.

      **a.** Plaintiff filed case number 23-520245 on Defendant Transit Employees Health and Welfare on March 8, 2023.

      **b.** Defendant Transit Employees Health and Welfare, LLC was served the charge and request for Data from U.S. Department of Health and Human Services (HHS), Office of Civil Rights on August 18, 2023.

      **c.** On September 6, 2023, U.S. Department of Health and Human Services (HHS), Office of Civil Rights requested Defendant Transit Employees Health and Welfare, LLC take corrective action and provide a plan of such action.

      **d.** Defendant Transit Employees Health and Welfare, LLC provided U.S. Department of Health and Human Services (HHS), Office of Civil Rights with documentation for the corrective action for the alleged violation on October 31, 2023.

28. More than 30 days prior to this institution of this action, Plaintiff filed an administrative inquiry with the Maryland Insurance Administration - Division of Insurance,

against Defendant Metropolitan Life Insurance Company (MetLife) for possible breach of contract and privacy violations in conjunction to Plaintiff's annual insurance enrollment form containing inquiry into Plaintiff's confidential medical information.

      a. Plaintiff filed inquiry with Maryland Insurance Administration on September 17, 2024.

      b. Maryland Insurance Administration on September 20, 2024 opened an investigation into the MetLife complaint – File Number MIA-2024-9-18-00166338.

      c. On September 25, 2024, Plaintiff provided Maryland Insurance Administration with additional documents needed to conduct such investigation.

      d. More than 45-days has passed since such investigation has commenced, Plaintiff has not received any update on the investigation.

29.    More than 30 days prior to the institution of this action, Plaintiff filed an administrative inquiry with Equal Employment Opportunity Commission (EEOC) against Defendant Transit Employees Health and Welfare, LLC and Bertha Villatoro alleging discrimination violations of Plaintiff's privacy in accordance with Titl1of the Americans with Disabilities Act, 42 U.S.C.

      a. Plaintiff filed administrative inquiry with EEOC on August 7, 2024.

      b. EEOC issued a charge of Discrimination against Defendant Transit Employees Health and Welfare, LLC on the basis of his disability with respect to breach of confidentiality in violation of the Americans with Disabilities Act of 1990 on December 3, 2024.

      **c.** On December 6, 2024, the Commission issued to Plaintiff a Dismissal and Notice of Your Right to Sue.

30. All conditions precedent to the institution of this action have been fulfilled.

**Facts Common to All Counts**

31.    Transit Employees Health & Welfare Fund, LLC is located at 2701 Whitney Place, Suite 100, Forestville, MD 20747.

32.    Transit Employees' Health & Welfare Fund, LLC. an employee welfare benefit plan within the meaning of Section 3(1) and (3) of ERISA, 29 U.S.C. §1002(1) established and maintained for the purpose of providing healthcare and other welfare benefits to eligible Washington Metropolitan Area Transit Authority ("WMATA" or "METRO") employees, retirees, employees of Amalgamated Transit Union Local 689 employees, their families, and dependents5.

33.    MetLife Insurance Company at all times relevant to this action fully insured Plaintiff under a group life insurance policy owned by TEHW, as well as an existing Life insurance policy Plaintiff purchased >10 years ago.

34.    The Transit Employees' Health & Welfare Plan was established and pursuant to collective bargaining agreements between the members and retirees of Amalgamated Transit Union, Local 689 and The Washington Metropolitan Area Transit Authority (WMATA).

35.    At all times relevant to this action, Plaintiff was an individual with a disability impairment, HIV infection, that substantially limits the major life activity of immune function required to sustain human life.

36.    For more than 20 years prior to this instant action, Plaintiff never disclosed his disability privately nor publicly to any persons other than his spouse and close family.

---

[5] TEHW's Board of (6) six Trustees is comprised of (3) trustees of whom is appointed by the WMATA and (3) trustees of whom is appointed by "the Union", ATU Local 689.

**Defendant's Ascertainment of Plaintiff's Private Health Information.**

37.     Plaintiff, as part of his November 2017 job offer from Amalgamated Transit Union, Local 689, was offered a benefits package that included health care, dental, vision, and life insurance to be administered by Defendant TEHW.

38.     On or around December 2017, Plaintiff received forms to apply for his healthcare, dental, vision, and life insurance from TEHW.

39.     On or around October 2018, Plaintiff received renewal forms from TEHW in accordance with TEHW's annual open enrollment for his 2019 benefits options.

40.     On November 2, 2018, Plaintiff submitted a MetLife "Enrollment/Change Form | Enrollment Period from October 19, 2018 – November 16, 2018" life insurance application to Defendants' TEHW Director of Administration, Sonja Jones.

41.     Sonja Jones was an authorized agent for Defendant MetLife — authorized to approve/deny Life Insurance Applications on-site up to an established limit.

42.     Sonja Jones was also the onsite representative collecting applications from TEHW's members and submitting them to MetLife via Federal Express at least twice weekly, for processing.

43.     In Plaintiff's submitted life insurance application was a subsection questionnaire labeled "Health Information" required to attain coverage.

44.     In the MetLife healthcare questionnaire, question number (1) asked "In the past 7 years, have you had any application for life insurance, accidental death and dismemberment or disability insurance declined, postponed, withdrawn, rated, modified or issued other than applied for"?

45. Plaintiff answered (YES) to question number (1) on the MetLife "Enrollment/Change Form | Enrollment Period from October 19, 2018 – November 16, 2018" life insurance application health information questionnaire.

46. In the MetLife healthcare questionnaire, queston number (4) asked "For Residents of all states except CT, please answer the following question: In the past 7 years, have you been diagnosed or treated by a physician of other health care provider for Acquired Immunodeficiency Syndrome (AIDS), AIDS Related Complex (ARC), or the Human Immunodeficiency Virus (HIV) Infection"?

47. Plaintiff answered (YES) to question number (4) on the MetLife "Enrollment/Change Form | Enrollment Period from October 19, 2018 – November 16, 2018" life insurance application health information questionnaire.

**Defendant's Improper Invasion and Disclosure of Plaintiff's Private Health Information.**

48. Around July 2021, TEHW employee Defendant Bertha Villatoro impermissibly accessed Plaintiff's medical records while Sonja Jones was on leave from TEHW.

49. Plaintiff's Records contained information related to his private life, his HIV-positive status.

50. On or around August 2021, Defendant Bertha Villatoro disclosed Plaintiff's HIV-positive status to TEHW's Chief Financial Officer, Crystal Long.

51. On December 6, 2021, Tonya Jackson was hired as Executive Director of Transit Employees Health and Welfare.

52. Tonya Jackson, as Executive Director, also served as TEHW's Privacy Officer.

53. Around March 2022, Bertha Villatoro approached Privacy Officer Tonya Jackson without permissive business purpose and advised her that Plaintiff was HIV-positive — physically

showing her a copy of Plaintiff's completed MetLife "Enrollment/Change Form | Enrollment Period from October 19, 2018 – November 16, 2018" life insurance application.

54.     Privacy Officer Tonya Jackson in a discussion with Crystal Long ("CFO Long") regarding her duty of reporting the Invasions of Plaintiff's records to Defendants' TEHW Board of Trustees, Crystal Long ("CFO Long") at that time reported that Defendant Bertha Villatoro had previously disclosed, without business purpose, Plaintiff's HIV-positive status to her as well.

55.     Around March 2022 Tonya Jackson first reported the invasion of Plaintiff's records by Bertha Villatoro to TEHW Trustee, Raymond Jackson.

56.     On or around April 2022, Privacy Officer, Tonya Jackson, further improperly disclosed to TEHW's trustee board[6], Plaintiff's HIV-positive private health information, with specificity.

57.     Despite having made report to the Board of Trustees, Around April 2022 and thereafter, conversations of Plaintiff's HIV-positive status remained general conversation within and outside the TEHW office[7].

58.     On or around June 24, 2022, TEHW Trustee Raymond Jackson maliciously disclosed Plaintiff's HIV-positive status to Brandon Godwin, without permissible business purpose, after Godwin served him with a civil summons regarding a non-related matter, on behalf of Plaintiff.

59.     On March 8, 2023, Plaintiff filed a timely complaint with the U.S. Department of Health and Human Services (HHS), Office for Civil Rights (OCR) regarding this impermissive access and disclosure of his private medical records.

---

[6] TEHW Trustees also have fiduciary duty to keep confidential any Private Health Information shared with them for the purpose of conducting business e.g. reporting of a breach or invasion of plan participants' privacy.
[7] Around August 2022, TEHW employed more than 15 employees to its staff.

60.     On May 2, 2023, in a deposition unrelated to this action, Privacy Officer Tonya Jackson rendered sworn testimony that Villatoro accessed Plaintiff's private medical records, breaching his confidentiality and began to share Plaintiff's private health information with others.

61.     Privacy Officer Tonya Jackson also rendered as part of her sworn testimony that she, herself, had no permissible business purpose to know of Plaintiff's HIV-positive status, despite being approached by Villatoro with the confidential information.

62.     As part of Tonya Jackson's deposition, she also admitted to sharing to TEHW's (6) member Board of Trustees, with specificity, Plaintiff's HIV-positive status, which was also improper.

63.     On May 19, 2023, TEHW Trustee, Keith Bullock, at a social function, confirmed to Plaintiff that Privacy Officer Tonya Jackson reported the Invasion and breach of Plaintiff's private health information by Bertha Villatoro and to his knowledge "no action had been taken".

64.     On June 30, 2023, Plaintiff was contacted by ATU Local 689 Vice President Romoam Bruce and advised that a publication went to the Amalgamated Transit Union, Local 689 entire 32-member executive board, further publicizing Plaintiff's private life — his HIV-positive status.

65.     On June 30, 2023, Vice President, Romoan Bruce, met Plaintiff and provided Plaintiff a copy of the email publication, below, that went to the 32-member board disclosing his HIV-positive status.

**From:** Local 689 Incident
**Sent:** Friday, June 30, 2023 9:09 AM
**Subject:** Local 689 Incident

Dear Executive Board Members:

The below are occurrences that have transpired within the Executive Leadership Team that you must be made aware of. They require your immediate attention. The parties privy to this knowledge, Raymond Jackson (President, Jackson) and Barry Wilson (Recording Secretary, Wilson), also served on the Trustee Board in 2020/2021 and did not share this incident with leadership.

---

Barry Hobson (Hobson), a 6-year openly gay Black male serving as Chief of Staff to the President Raymond Jackson, Local 689, Amalgamated Transit Union AFL-CIO, was released from his position early 2021.

Hobson experienced two major life events that played a deep role in the breakdown of his mental health. In the same year, his sister passed away of a massive heart attack and his mother died of cancer. Subsequently, Local 689 leaders released Barry from his position.

- After his mother's passing – and protecting Local 689 and his personal sanity – Hobson sought Americans with Disabilities Act (ADA) accommodations related to his proficiency to perform job responsibilities to the highest level possible, which is the notable thing to do.

- Following the passing of his mother, and filing for ADA accommodations, Hobson was released from his position.

- Local 689 intonated that Hobson was released due to cost-cutting measures. However, no other team members were released during this time due to cost-cutting measures.

- Once ADA accommodations were filed, Hobson learned that Local 689 leaders investigated his personal medical records, logging into his personal files without his permission. In Hobson's medical files is a diagnosis that continues to be stigmatized in blue color organizations.

In opposition of being released, Hobson filed a suit in the DC courts, Maryland district, against Local 689 asserting the following.

- Hobson is HIV positive – and is strongly asserting that local 689 released him because of his health status.

- Hobson is also asserting that he was released due to his sexual orientation. Hobson identifies as openly gay.

- Hobson is asserting he was discriminated against by Local 689 due to his HIV diagnosis and identifying as a gay homosexual.

- Having worked without adequate overtime pay, Hobson also asserts that "throughout his employment at local 689, he regularly worked in excess of 40 hours per week without receiving overtime pay, and that he never received the salary increase promise in connection with his promotion to the Chief of Staff position." (https://casetext.com) The pay increase did not happen.

In closing, as the Executive Board, now that you are aware of these occurrences, the onus now rests completely on you to investigate this entire matter; resolve the issue with Hobson as well as open an individual investigation against Jackson and Wilson. Beyond that, these cases must be settled not only due to monetary amounts it is costing the union, but the embarrassment as well.

Thank you for your immediate attention to this matter that has quickly spread across the Internet and membership and has the potential to go further, publicly.

66.     Upon information, and belief, Villatoro is the author and distributor of said email.

67.     On or around November 21, 2023, retiree Angela Morina, contacted Plaintiff to advise of her knowledge of his HIV-positive status and improper invasion of Plaintiff's medical records prior to June 1, 2023.

68.     On or around December 13, 2023, plan participant Tracy Smith, contacted Plaintiff to advise of her knowledge of his HIV-positive status and improper invasion of Plaintiff's medical records from another TEHW plan recipient, prior to June 1, 2023.

69.     On January 25, 2024, Plaintiff received a text message to his personal cell phone stating "you forgot to post your HIV status, post that".

70.     On or around May 2024, retiree Linda Mercer contacted Plaintiff to advise of her knowledge of his HIV—positive status from other TEHW plan recipients prior to June 1, 2023.

71.     On or around July 2024, Carroll Thomas, contacted Plaintiff to advise that he had been contacted by more than 2 individuals regarding their knowledge of Plaintiff's HIV-positive status and improper invasion of Plaintiff's medical records from other TEHW plan recipients.

72.     On July 15, 2024, coincidentally, after Plaintiff's complaint to U.S. Department of Health and Human Service, TEHW's Board of Trustees, without reason, announced by way of publication attached as **Exhibit 3,** that effective August 1, 2024, MetLife would become the administrator and recordkeeper of the Group Term Life Insurance program — ceasing any of TEHW's contact with said forms or information any longer.

73.     On October 19, 2024, Romoan Bruce, ATU Local 689's Vice President, contacted Plaintiff and advised that more than 25-30 people both inside and outside of the organization has approached him regarding Plaintiff's HIV-positive status having been shared with them almost weekly from other plan participants.

74. On November 21, 2024, WMATA retiree Angela Morina, contacted Plaintiff a 2nd time to advise that she has gotten at least 5 calls from other TEHW participants advising of their learning of Plaintiff HIV-positive status from other plan participants and all reported knowing the information prior to June 1, 2023.

75. As of the preparations of this action, Plaintiff himself continues to receive calls from random friends and associates about their learning of his HIV-positive status from a related TEHW source. that he had no desire to be public; none of which indicating they received this knowledge from any online court filing records.

**Defendant's Malicious Attempt to Prosecute Plaintiff.**

76. Prior to March 22, 2022, Plaintiff has never met nor engaged with Tonya Jackson, Executive Director of Transit Employees Health and Welfare Fund, LLC.

77. Prior to March 22, 2022, Plaintiff has never met nor engaged with Crystal Long, Chief Financial Officer of Transit Employees Health & Welfare Fund, LLC.

78. On March 9, 2022, in their capacities as TEHW Officers, Tonya Jackson and Crystal Long filed malicious Criminal Harassment, A course of Conduct, charges CR 3.802 against Plaintiff in The District Court of Prince George's County.

79. In an effort to abet Criminal Charges beyond what would be a Civil Peace Order, Tonya Jackson and Crystal Long admitted to having misrepresented to a County Commissioner that Plaintiff had been preciously contacted and advised to not "harass" or contact either[8].

80. Plaintiff was never contacted by neither accuser prior to nor regarding the filing of these criminal charges of harassment.

---

[8] By representing to the county commissioner that Plaintiff had been contacted (previously) and asked not to harass, elevated such harassment complaint to a criminal offense.

-18-

74. On November 21, 2024, WMATA retiree Angela Morina, contacted Plaintiff a 2nd time to advise that she has gotten at least 5 calls from other TEHW participants advising of their learning of Plaintiff HIV-positive status from other plan participants and all reported knowing the information prior to June 1, 2023.

75. As of the preparations of this action, Plaintiff himself continues to receive calls from random friends and associates about their learning of his HIV-positive status from a related TEHW source. that he had no desire to be public; none of which indicating they received this knowledge from any online court filing records.

**Defendant's Malicious Attempt to Prosecute Plaintiff.**

76. Prior to March 22, 2022, Plaintiff has never met nor engaged with Tonya Jackson, Executive Director of Transit Employees Health and Welfare Fund, LLC.

77. Prior to March 22, 2022, Plaintiff has never met nor engaged with Crystal Long, Chief Financial Officer of Transit Employees Health & Welfare Fund, LLC.

78. On March 9, 2022, in their capacities as TEHW Officers, Tonya Jackson and Crystal Long filed malicious Criminal Harassment, A course of Conduct, charges CR 3.802 against Plaintiff in The District Court of Prince George's County.

79. In an effort to abet Criminal Charges beyond what would be a Civil Peace Order, Tonya Jackson and Crystal Long admitted to having misrepresented to a County Commissioner that Plaintiff had been preciously contacted and advised to not "harass" or contact either[8].

80. Plaintiff was never contacted by neither accuser prior to nor regarding the filing of these criminal charges of harassment.

---

[8] By representing to the county commissioner that Plaintiff had been contacted (previously) and asked not to harass, elevated such harassment complaint to a criminal offense.

-18-

81.    Plaintiff was served at his home by Prince George's County Sheriff Deputy on March 21, 2022, with Criminal Summons regarding Tonya Jackson, Crystal Long, from The State of Maryland alleging Criminal Harassment; A course of conduct CR3.802 (**Exhibit 4**).

82.    On or around March 2022, TEHW's Board of Trustees approved to authorize hire of counsel and to pay legal fees for their employees, implicating this matter as one of TEHW business.

83. Defendant TEHW hired counsel on behalf of its officers.

84. Defendant TEHW paid all Court costs associated with said cases.

85.    As a result of the malicious Criminal Charges, A Course of Conduct CR3.803, Plaintiff was subjected to Law Enforcement appearing at his home (drawing attention of his neighbors and community), Notices posted on the front door of his home, Plaintiff's name and charges appear[ed][s] in Maryland Public Record Database, Plaintiff's name and charges appeared in publications that traveled throughout the United States Postal Service mail system, Plaintiff's name appear[ed] on a public display board in The Prince George's County Courthouse in Upper Marlboro, Plaintiff name and charges/cases remain in public files in possession of the District Court of Maryland and The Maryland State's Attorney office, and appears on various Internet search databases when initiated (**Exhibit 5**)

86.    In accordance with Maryland Rule 4-247, Maryland State's Attorney Office entered an action of *Nolle Prosequi* in the matters. All criminal charges were dismissed (**Exhibit 6**)

87.    On November 23, 2023, Plaintiff applied for an apartment home and was denied residency due to "Criminal and other public records unsatisfactory".

88.     Plaintiff, in accordance with his rights under the Fair Credit Reporting Act requested a copy of said criminal information provided to the management company of the apartment home who denied him residency.

89.     On November 28, 2023 Plaintiff received a copy of his consume file in accordance with his apartment home rental denial, and the referenced criminal charges were those maliciously brought by Tonya Jackson and Crystal Long **(Exhibit 7).**

90.     On November 21, 2024, Plaintiff, after deciding to sell his home, applied for another apartment home and was denied residency for him and his children due to "Criminal and other public records unsatisfactory".

91.     Plaintiff, again, in accordance with his rights under the Fair Credit Reporting Act requested a copy of said criminal information provided to the management company of the apartment home who denied him residency.

92.     Plaintiff, again, received a copy of his consume file in accordance with his apartment home rental denial, and the referenced criminal charges were those maliciously brought by Tonya Jackson and Crystal Long.

**Count I**
**Invasion of Privacy (Unreasonable Privacy to Private Life)**
**(ALL DEFENDNATS)**

93.     Plaintiff hereby restates and incorporates all preceding paragraphs as if fully stated herein.

94.     Plaintiff was, at all times, relevant hereto, positive for human immunodeficiency virus ("HIV").

95. At some point during 2021, believed to have been in July, an employee of the Defendant TEHW, Defendant Bertha Villatoro, accessed Plaintiff's private records with no permissible business purpose.

96. At some point during 2021, believed to be August, Defendant Bertha Villatoro began to share with other employees of the Defendant, and persons outside the same, that Plaintiff was HIV-positive.

97. Defendants obtained this information directly from the Plaintiff's medical records in possession of the Defendant without legitimate reason or basis and in violation of Plaintiff's right to privacy.

98. Upon information and belief, this information is believed to have been shared with at least seventy-five (75) persons without Plaintiff's consent prior to June 1, 2023.

99. On or around April 2022, Privacy Officer, Tonya Jackson improperly advised TEHW's trustee board of an improper invasion, disclosure, and breach of Plaintiff's medical records by TEHW employee, Berthta Villatoro, of Plaintiff's specific private health information.

100. Upon information and belief, no action was taken by TEHW's trustee board after being notified in April 2022 of an improper invasion, disclosure, and breach of Plaintiff's medication records by TEHW employee, Berthta Villatoro.

101. On June 24, 2022, TEHW Trustee Raymond Jackson maliciously publicized Plaintiff's HIV-positive status to Brandon Godwin without permissible business purpose.

102. On May 19, 2023, TEHW Trustee Keith Bullock admitted to Plaintiff that the TEHW Board of Trustees had been informed of the invasion of his records and publication of Plaintiff's private life and HIV-positive status.

103.     Upon information and belief, On or around June 30, 2023, Bertha Villatoro sent publication to Amalgamated Transit Union, Local 689 32-member executive board further publicizing Plaintiff's private HIV-positive status.

104.     Plaintiff never shared his HIV-positive status to Defendant Bertha Villatoro.

105.     Plaintiff never shared his HIV-positive status with Tonya Jackson.

106.     Plaintiff never shared his HIV-positive status with Keith Bullock.

107.     Plaintiff never shared his HIV-positive status with Angela Morina.

108.     Plaintiff never shared his HIV-positive status with Tracy Smith.

109.     Plaintiff never shared his HIV-positive status with Romoan Bruce.

110.     Plaintiff never shared his HIV-positive status with Carroll Thomas.

111.     Plaintiff never shared his HIV-positive status with TEHW's Trustee Board.

112.     Plaintiff never shared his HIV-positive status with Amalgamated Transit Union, Local 689's Executive Board.

113.     The Defendant's actions, including those in the course of their employment, board appointments, vendor contracts, and other business dealings with Plaintiff's private information in the same, constituted the giving of publicity to Plaintiff's private life — his HIV-positive status.

114.     Plaintiff's HIV-positive status was not of valid concern to the public and was to be shared by Plaintiff when and if at any time in his life he chose.

115.     The publication of a person's medical condition, especially as it relates to HIV is highly offensive to a reasonable person of ordinary sensibilities.

116.     Therefore, the Defendants have invaded the Plaintiff's privacy by giving publication to Plaintiff's private life.

117.    As a result of the Defendants' conduct, Plaintiff has suffered damages, including, but not limited to emotional pain, suffering, inconvenience, feelings of depression, weight gain, loss of hair, feelings of fear and rejection, loss of enjoyment of life, the deterioration of friendships, loss of consortium, and other non-pecuniary losses and is entitled to damages.

## Count II
## Malicious Prosecution
## (TEHW)

118.    Plaintiff realleges and reasserts each and every allegation set forth in paragraphs above as if each were set forth herein verbatim

119.    A criminal proceeding was instituted against Plaintiff by Defendant

120.    Defendant, by, or abetted, in the institution of such proceeding

121.    Termination of all proceedings were in favor of Plaintiff

122.    The Defendant never observed Plaintiff in an act of wrongdoing, never contacted Plaintiff to stop harassing, and admitted not having knowledge of Plaintiff except via social media, therefore, absence of probable cause in instituting the proceedings exist

123.    Defendant has represented that malice was the primary purpose for the proceedings.

124.    Plaintiff has suffered injury and damage as a result of the proceedings, to include denial or residency for himself and his children.

125.    As a result of these proceedings, Plaintiff was diagnosed with insomnia, depression, and anxiety and was prescribed Trazodone (Desyrel[9]) — an antidepressant.

126.    Defendants, because of their actions, are liable for Malicious Prosecution

---

[9] https://www.mayoclinic.org/drugs-supplements/trazodone-oral-route/description/drg-20061280

127.     As a result of the Malicious Prosecution, Plaintiff has suffered and continues to suffer severe character and reputation damage, ongoing mental health challenges, ongoing physical health damage/challenges, financial damages, and other damages arising from Defendant's actions.

**Count III**
**Breach of Contract**
**(ALL DEFENDANTS)**

128.     Plaintiff realleges and reasserts each and every allegation set forth in paragraphs above as if each were set forth herein.

129.     Plaintiff was from January 1, 2018 until August 31, 2021 had health insurance, dental insurance, vision insurance, and life insurance all administered through Transit Employees Health and Welfare, LLC.

130.     Plaintiff, having purchased individual life insurance coverage or who enrolled pursuant to the terms of a group contract and outside individual contract with MetLife entered into a binding and enforceable contract supported by consideration(s) including payments of premiums, contributions, and/or fees by Plaintiff.

131.     Plaintiff, having purchased family health insurance coverage or who enrolled pursuant to the terms of a group contract owned by TEHW entered into a binding and enforceable contract supported by consideration(s) including payments of bi-weekly payroll deductions for premiums, contributions, and/or fees by Plaintiff.

132.     These contracts incorporated both MetLife and TEHW's privacy policies wherein both Defendants promised to protect the privacy of Plaintiff's private health

information in accordance with federal and state privacy laws, as well as their own privacy policies.

133.     Specifically, in a document provided to Plaintiff in connection with this MetLife application for insurance coverage, MetLife stated:

- *This privacy policy is for individual who apply or obtain out products and services under an employee benefit plan, group insurance, or annuity contract, or as an executive benefit. In this notice, "you" refers to these individuals.*
- *We take important steps to protect your personal information. We treat it as confidential. We tell our employees to take care in handling it. We limit access to those who need it to perform their jobs. Our service providers must also protect it and use it only to meet business needs. We take steps to protect our systems from unauthorized access. We comply with all laws that apply to us.*

134.     Specifically, in a document provided to Plaintiff in connection with his benefits initial and continuing benefits enrollment, TEHW stated:

- *Uses and disclosures of your PHI other than those described above will be made only with your express written authorization. For example, the Plan must generally obtain your written authorization before: (1) using or disclosing psychotherapy notes about you from your psychotherapist; (2) using or disclosing your PHI for marketing purposes (a communication that encourages you to purchase or use a product or service) if the Plan receives direct or indirect financial remuneration (payment) from the entity whose product or service is being marketed; and (3) receiving direct or indirect remuneration (payment or another benefit) in exchange for receipt of your PHI. You may revoke your authorization at any time, provided you do so in writing. If you cancel a written authorization to use or disclose PHI, the Plan will not use or disclose your PHI, except to the extent that the Plan already relied on your authorization. Once your PHI has been disclosed under your authorization, the federal privacy law protections may no longer apply to the disclosed health information. That information may be re-disclosed by the recipient without your knowledge or authorization. Your PHI may be disclosed to people authorized to act on your behalf or people with a legal right to act on your behalf.*

135.     It was a violation of federal, state, TEHW, and MetLife's privacy policies to disclose Plaintiff's highly confidential HIV information in the manner described above.

136. As a result of TEHW and MetLife's breach of contract, Plaintiff did not receive full benefit of the bargain and instead received insurance services that were less than valuable that described in their policies that ensured protection of Plaintiff's private health information.

137. Plaintiff relied upon the covenants within as security that his personal health information would be safe and not shared by TEHW and MetLife except as permitted by law.

138. As a direct and proximate result of Defendants' breach of its contract, Plaintiff has suffered damages including, but not limited to emotional pain, suffering, inconvenience, feelings of depression, weight gain, loss of hair, feelings of fear and rejection, loss of enjoyment of life, the deterioration of friendships, loss of consortium, and other non-pecuniary losses and is entitled to damages.

## Count IV
### Negligence
### (ALL DEFENDANTS)

139. Plaintiff realleges and reasserts each and every allegation set forth in paragraphs above as if each were set forth herein.

140. Defendants owed duties of care to protect the disclosure of Plaintiff's and Class Members' private medical information. Plaintiff and Class Members entrusted their private medical information to Defendants

141. Defendants knew or should have known of the risks inherent in disseminating highly personal and confidential, HIV-related medical information of Plaintiff without his consent.

142. Defendants owed duties of care to Plaintiff because Plaintiff was a foreseeable and probable victim impermissible disclosure of his private health information and negligent privacy practices used to protect private health information from being breached.

-26-

143.   Defendants acted with wanton and reckless disregard for the security and confidentiality of Plaintiff's private medical information by providing disclosing this information to a third parties, and by failing to properly supervise the manner in which the protected information was being handled.

144.   By allowing simple access to Plaintiff's MetLife enrollment forms in the fashion that they did, Defendants breached their duties to Plaintiff by failing to exercise reasonable care in protecting Plaintiff's medical information.

145.   As a direct result of Defendants' negligence and/or negligent handling, Plaintiff has suffered or will suffer damages, including embarrassment, humiliation, frustration, anxiety, emotional distress, and fear, and are at increased risk for losing employment, housing, access to health care, and even violence or other trauma.

**Count V**
**Negligence *Per Se***
**ALL DEFENDANTS**

146.   Plaintiff realleges and reasserts each and every allegation set forth in paragraphs above as if each were set forth herein.

147.   Pursuant to HIPAA (42 U.S.C. § 1320d, *et seq.*) and Maryland law, Defendants had a duty to implement and maintain reasonable safeguards to protect Plaintiff's medical information, especially confidential HIV-related medical information.

148.   Defendants breached their duties to Plaintiff under the aforementioned statutes by disclosing his information to a third parties impermissibly and without his consent.

149.   But for Defendants' negligent breach of their duties and/or negligent supervision, Plaintiff would not have been injured.

150.    The injury and harm suffered by Plaintiff was the reasonably foreseeable result of Defendants' breach of their duties.  Defendants knew or should have known that they were failing to meet their duties, and that Defendants' breach would cause Plaintiff and to experience the foreseeable harms associated with the exposure of his confidential medical information.

151.    As a direct and proximate result of Defendants' negligent conduct and/or negligent handling, Plaintiff and has been injured and is entitled to damages.

**Count VI**
**Maryland Unfair Trade Practices and Consumer Protection Law**
**Annotated Code of MD § 13-301**
**(ALL DEFENDANTS)**

152.    Plaintiff realleges and reasserts each and every allegation set forth in paragraphs above as if each were set forth herein.

153.    Plaintiff purchased insurance from MetLife and purchased health benefits services from TEHW in trade and commerce for personal, family, and/or household purposes.

154.    Defendants engaged in unlawful, unfair, and deceptive acts and practices, with respect to the sale and advertisement of the services purchased by Plaintiff including  by representing that Defendants would adequately protect Plaintiff highly confidential medical information from unauthorized disclosure and release and comply with relevant state and federal privacy laws. These injuries outweigh any benefits or to competition.

155.    Defendants knew or should have known that impermissibly disclosing Plaintiff's private health information in the fashion in which they did was inadequate to safeguarding and protecting Plaintiff's medical information for others.  Defendants' actions

contrary to their own privacy policies were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff.

156.    As a direct and proximate result of Defendants' deceptive acts and practices, Plaintiff suffered the loss of their legally protected interest in the confidentiality and privacy of his personal information and is entitled to damages, attorney fees, and costs of this action.

## Count VII[10]
## Violation of Americans with Disabilities Act
## Breach of Confidentiality
## (ALL DEFENDANTS)

157.    Plaintiff realleges and reasserts each and every allegation set forth in paragraphs above as if each were set forth herein.

158.    Since at least on or around July 2021, Defendant Transit Employees Health and Welfare LLC engaged in employment practices that are unlawful under the ADA, in violation of Sections 102(a) and 102(d)(4)(C) of Title I of the ADA.

159.    Plaintiff is a qualified individual with a disability under sections 3 and 101(8) of the ADA, 42 U.S.C. §§ 12102 and 12111(8).

160.    Plaintiff has an impairment, HIV infection, that substantially limits the major life activity of immune function.

161.    Plaintiff at all times relevant to this action was qualified to work as an Executive Assistant and could perform all the essential functions of that position.

162.    Defendants obtained confidential medical information about Plaintiff's impairment through the annual "Open Enrollment" process where Plaintiff and his co-workers would renew their annul employer-sponsored benefits for the upcoming year.

---

[10] This claim is pursuant the EEOC Right to Sue issued to Plaintiff on December 6, 2024 asserting Plaintiff's rights under the Americans with Disabilities Act.

163. At all times relevant to this action, Defendant TEHW by and through its employees and officers, was acting an agent for Defendant MetLife as a processing administrator of its insurance products.

164. Plaintiff's confidential information was recorded in a questionnaire embedded in his insurance enrollment forms provided by Defendant, MetLife, and processed by Defendant Transit Employees Health and Welfare, LLC.

165. At lease since or around November 2020, after learning of Plaintiff's disability through his enrollment forms Defendant Bertha Villatoro, in her capacity as employee of TEHW, began to share such form and details of Plaintiffs confidential medical information to persons to whom the ADA does not permit disclosure.

166. Defendants made the unlawful disclosures through Defendant Bertha Villatoro.

167. Villatoro shared the information with at least 10 co-workers in her office with no need-to-know, to include Executive Director, Tonya Jackson, Privacy Officer.

168. Executive Director and Privacy Officer, Tonya Jackson, further disclosed Plaintiff's confidential information to Defendant's TEHW Board of Directors with specificity and to other members of management.

169. Defendant TEHW board member, on June 21, 2022, Raymond Jackson, disclosed Plaintiff's medical information to Bus Operator, Brandon Godwin.

170. On June 21, 2022 Bus Operator, Brandon Godwin, shared Plaintiff's disability with (2) of his co-workers in apparent confidence.

171. Discussion of Plaintiff's confidential information became regular gossip 'around the office'.

172. Shortly after reporting Plaintiff's confidentiality breach and other concerns regarding Defendant Villatoro to Defendant's TEHW board of Trustees, Executive Director, Tonya Jackson, was terminated from her employment

173. In a deposition on May 1, 2023, unrelated to this matter, Executive Director, Tonya Jackson, rendered testimony confirming actions in violation of Plaintiff's rights protected under the Americans with Disabilities Act.

174. Defendants' unlawful practices complained of above were intentional.

175. Defendants' unlaw practices complained of above were done with malice or with reckless indifference of the federally protected rights of Plaintiff.

176. On July 15, 2024, randomly and coincidently, Defendants, collectively, issued notice to all of its plan participants, authorized by Defendant TEHW's Board of Trustees, that MetLife would become the sole administrator and recordkeeper for all Life Insurance Coverage related administration.

177. As of August 1, 2024, MetLife insured participants' business dealing is directly through MetLife and not TEHW.

### Count VIII
### Violation of the Rehabilitation Act of 1973
### (ALL DEFENDANTS)

178. Plaintiff realleges and reasserts each and every allegation set forth in paragraphs above as if each were set forth herein

179. Defendants improperly disclosed Plaintiff's privileged and confidential medical information to individuals without a need to know without Plaintiff's consent in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq.

180. These violations have caused, and will continue to cause, Plaintiff harm, such as severe emotional distress, anxiety, and damage to character and reputation.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that this Court enter judgment against Defendants Transit Employees Health and Welfare Fund, LLC, MetLife, and Bertha Villatoro, and:

A. Grant a permanent injunction enjoining Defendants Transit Employees Health and Welfare, LLC, MetLife, and Bertha Villatoro, it officers, agents, servants, employees, attorneys, and all persons in active concert or participation with it, from disclosing medical records of current or former employees to persons the ADA does not permit disclosure, subjecting employees with an actual or perceived disability to breaches of confidentiality and other harm or embarrassment protected by the ADA.

B. Declare that the acts of the Defendants violated Maryland's common law tort laws;

C. Declare that the acts of the Defendants violated Federal Law(s).

D. Declare that the acts of the Defendants invaded upon Plaintiff's right to privacy;

E. Direct that Defendants take such affirmative action as is necessary to ensure that the effect of these unlawful privacy violation practices are eliminated and do not continue;

F. Direct Defendants to award Plaintiff monetary damages in an amount to be determined at trial to include compensatory damages for emotional distress, pre and post-judgement interest and the cost of this action, including reasonable attorney's fees, reasonable expert witness fees, and other costs of the action to be paid by the Defendant.

**G.** Direct Defendants to award Plaintiff punitive damages due to Defendant's malicious and intentional or callously and recklessly indifferent conduct in an amount appropriate to proof at trial; and

**H.** Grant such other and further relief as this court deems necessary and proper

Respectfully Submitted,

Barry Hobson
9016 Ruby Lockhart Blvd
Lanham, MD 20706
202.368.7269 (Telephone)
Barry_hobson@outlook.com (Email)

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2024, I caused true copies First Amended Complaint

(with all exhibits) and First Amended Complaint – Redline Version to be served by first class

mail, postage prepaid, upon the following:

**Richard S. Siegal**
**Slevin & Hart, P.C.**
**1300 Connecticut Ave., N.W. Suite 700**
**Washington, DC 20036**
**Counsel for Defendants Transit Employees Health & Welfare LLC and Bertha Villatoro**

Date: December 9, 2024          Respectfully Submitted,

Barry Hobson, Plaintiff
9016 Ruby Lockhart Blvd
Lanham, MD 20706
202.368.7269 Telephone
Bchobson82@gmail.com Email