# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

BARRY HOBSON,

       *Plaintiff,*

    v.

Transit Employees Health & Welfare
Fund, LLC, *et al.*

       *Defendant.*

**Case No: 8:25-cv-00146-PX**

MAR 1 7 2025

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
NIGHT DEPOSIT BOX

## PLAINTIFF'S COMBINED MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO DEFENDANTS MOTION TO DISMISS WITH PREJUDICE

Plaintiff, Barry Hobson, *Pro Se*, respectfully submits this Combined Memorandum of Points and Authority in opposition to Defendant's Motion to Dismiss with Prejudice. Defendant's motion should be denied in its entirety and the matter permitted to proceed forward. In support thereof, Plaintiff states the following:

### I.    Introduction

Plaintiff has not commenced the action lightly.

Plaintiff was a recipient of employer sponsored benefits plan administered by and through Defendants' Transit Employee Health and Welfare Fund, Bertha Villatoro and Metropolitan Life Insurance Company from November 2017 until August 2021. At all times relevant to this matter, Plaintiff was an individual with a disability impairment, HIV Infection. All Defendants are attempting to escape liability on all counts by misleading the court to 1) Believe that this action is one connected to Plaintiff's August 2021 termination from his previous employer, Amalgamated Transit Union, Local 689, 2) Plaintiff and Defendants' have no employee-employer relationship

that bounds them to liability, and 3) Plaintiff has failed to plausibly plead enough facts to allow this action to proceed.

Through their motion, Defendants are seeking to escape liability for their knowing commission of malicious, unlawful acts, failures to comply with contractually stated covenants within their established and published guides and by invading Plaintiff right to privacy to his personal life. Defendants are also attempting to elevate the "words" used within Plaintiff's First Amended Complaint over its contents while seeking to impose a heightened pleading standard for Plaintiff who remains a *Pro Se* litigant at the administrative and current state(s) of this matter. Defendants attempt to impose such heightened burden upon pro se litigants to identify virtually all of the facts supporting their claims in the administrative phase of litigation and flawlessly execute the forms would have a chilling effect on a Plaintiff's efforts to seek redress for violations of the Defendants. Such heightened pleading requirements is also contrary to the State of Maryland's jurisprudence in this matter.

Lastly, as it relates to Defendant's claim(s) that Plaintiff failed to state claims upon which relief can be granted, when viewed in light most favorable to Plaintiff, the Frist Amended Complaint plausibly states claims entitling Plaintiff to relief. Throughout the First Amended Complaint, Plaintiff plainly articulates how he understood, by mutual agreement, that his private health information to be protected, he understood the Defendant's expressed offer for privacy, he clearly understood and accepted the covenants vowing to protect his private health information before signing and submitting the application for processing. Plaintiff also articulates plainly how Defendant TEHW is liable for the actions of their employees, who acted as agents for the organization while maliciously attempting prosecution against Plaintiff.

## II.    Plaintiff's Allegations and Arguments

**First**, Defendants seek to prematurely impeach Plaintiff and mislead the court by asserting that this action is a continuation of actions brought by Plaintiff as a result of his termination from his previous employer. In-fact, Defendant, in their separate motions contradict each other in their implications of how many complaints were filed. One Defendants states Plaintiff filed (7) seven complaints while another states Plaintiff filed (8) complaints against his former employer. However, what both Defendants fail to mention is that Plaintiff, *Pro Se*, for all of the proceedings later retained Counsel, and all of the actions were combined, litigated, and settled for $350,000 as prescribed in **Exhibit 1**. Defendants again, attempt to prematurely impeach Plaintiff for a novice act as a *Pro Se* Plaintiff to in an effort to dismiss this action. The highlighted facts of such mentioning, when viewed in light most favorable to Plaintiff should not be considered in deciding the fate of this action.

**Second**, Defendants, relying upon outdated case law, allege that there is no employer relationship with Plaintiff and Defendants. Given the structure of Plaintiff's actual employer, it is very important for the Court to understand the lay of the land and how Plaintiff even had a file with Defendants, despite their argument that he was not an employee. Transit Employees' Health & Welfare Fund, LLC. an employee welfare benefit plan within the meaning of Section 3(1) and (3) of ERISA, 29 U.S.C. §1002(1) established and maintained for the purpose of providing healthcare and other welfare benefits to eligible Washington Metropolitan Area Transit Authority ("WMATA" or "METRO") employees, retirees, employees of Amalgamated Transit Union Local 689 employees, their families, and dependents[1]. Plaintiff met the qualification as an employee of Amalgamated Transit Union, Local 689. All employee benefits for Plaintiff were administered by

---

[1] As defined by the U.S. Department of Labor (DOL), a health and welfare plan is an employee welfare benefit plan established by an employer or employer organization (such as a union), or both.

TEHW. Defendant TEHW held sole control over all benefits offered to Plaintiff. TEHW established the plans available to Plaintiff, negotiated and administered the cost of such plans, as well as served as a principal agent for the employer, Amalgamated Transit Union Local 689 regarding employee benefits.

On October 26, 2023, the National Labor Relations Board ("NLRB" or "the Board") released a final rule, *Browning-Ferris Industries* (*BFI*) decision (2023), setting forth the standard for joint-employer status under the National Labor Relations Act ("NLRA" or "the Act"). Under the final rule, two or more employers will be held to be joint employers where they share or codetermine those matters governing employees' essential terms and conditions of employment. The Board defines "share or codetermine" to mean "possess the authority to control (*whether directly, indirectly, or both*) or to exercise the power to control (*whether directly, indirectly, or both*) one or more of the employees' essential terms and conditions of employment", to include employee benefits and wellness plans. Applicable here, Plaintiff's terms and conditions of employment as detailed in **Exhibit 2**, offer such "Benefits" as a condition of his employment, that, while offered by the sole employer, were administered under direct authority and control of Defendants — codifying Defendant TEHW a joint employer to Plaintiff.

Furter, in Hobson vs. Local 689, Amalgamated Transit Union AFL-CIO, No. 8:23-cv-02405 (D. Md. 2023), The court ruled that Plaintiff could not vicariously hold Local 689 liable for the actions of Defendants' employees. The ball doesn't stop rolling there. If employers wanted to avoid liability against such actionable claim brought herein, all one would have to do is establish a third-party health and wellness fund to management its employee benefits instead of a traditional internal 'Benefits Department' and employees' privacy and other rights would never be protected if such liability wouldn't apply to the fund. In organizations where operational structure calls for an outside

entity to maintain control over various terms of employment conditions and one isn't able to hold the employer directly liable for actional privacy violations, who would be liable?

In like manner, MetLife, contends in its motion that Sonja Jones was not an employee of MetLife. However, MetLife while a vendor, set the scope of work, processing policy, granted the underwriting authority, and controlled all aspects of the operation pertaining to how TEHW collected, processed, and stored data collected on behalf of the life insurance issued by MetLife. None of those standards were set by Plaintiff's former employer Local 689 nor TEHW[2]. Plaintiff argues here that MetLife's ability to control the manner and means by which the insurance applications were handles is a crucial factor as well as determining that MetLife was also joint employer to anyone tasked within the TEHW office to handle such applications[3].

**Third**, In Defendants Motion to Dismiss with Prejudice, Defendants make the disgusting and immoral argument that Plaintiff himself publicly disclosed his HIV-positive status when he filed a Complaint in an unrelated matter with the Court. The Defendant attempts to circumvent this argument by arguing this issue was not private because the Plaintiff sought relief in a public forum. More specifically the Defendants claim that because Plaintiff set forth his HIV status in a separate matter within the Court that Plaintiff's HIV status was never private in the first place. If the Defendant's argument was to be accepted, no Plaintiff could ever bring a well pleaded cause of action for and invasion of privacy because, by doing so, they would be discussing private matters in a public forum. Courts have ruled that Plaintiff's don't concede their right to privacy by disclosing such health information in a Court pleading. Defendant's argument is without merit and

---

[2] In Plaintiff's capacity as Chief of Staff, he reviewed all vendor and working agreements on behalf of TEHW Trustee Raymond Jackson. Plaintiff recalls review and approval of said agreement between MetLife and TEHW granting only Sonja Jones and James McGee right to the applications and underwriting authority at the office level.
[3] Including those outside of the original scope of work where duties of such would be assigned as a designee.

serves as a very disgusting attempt to escape responsibility for being heard before this Honorable Court.

**Fourth,** Defendants are seeking to estop Plaintiff from an Invasion of Privacy claim against Defendants citing a previous ruling on a Motion for Summary Judgment in Hobson vs. Local 689, Amalgamated Transit Union AFL-CIO, No. 8:23-cv-02405 (D. Md. 2023). It is important to note that despite Defendants' efforts to muddy the waters, none of the moving Defendants were parties to that case. Plaintiff brought that case against his former employer, Local 689. While there was an attempt to assert employees of TEHW as agents of Local 689, the Court found that there was no agency relationship between Villatoro and Local 689 for the purpose of disclosure of Plaintiff's HIV-positive status, however, there is sufficient evidence in this record to establish that relationship here with both Defendants TEHW and MetLife.

Defendant, Bertha Villatoro, was an employee of TEHW at all times relevant to this action. In the State of Maryland, under the principle of "respondeat superior," employers are generally held accountable for the tortious actions of their employees if those actions occur within the scope of the employee's employment *Tall v. Bd. of School Commissioners of Baltimore City*, 120 Md. App. at 251, 706 A.2d at 667. Further, after the Court's MSJ opinion in Hobson vs. Local 689, Amalgamated Transit Union AFL-CIO, No. 8:23-cv-02405 (D. Md. 2023), new evidence reveals that Defendant's agents asserted to several members directly and indirectly the invasion and improper disclosure of Plaintiff's HIV-positive health status. Additionally, information unavailable at such time of the said MSJ, reveals a direct witness who was told by a TEHW trustee in June of 2022 that Hobson was HIV-positive **Exhibits 3-5**.

Defendants TEHW and Bertha Villatoro offers criticism in their motion that people waited several months to contact Plaintiff to advise of knowledge of his HIV-positive status prior to June

1, 2023. This line alone again highlights Defendants', despite their fiduciary duty to act within the best interest of the plan's participants, insensitivity to HIV related stigma that is still widely prevalent and debilitating to both people living with HIV as well as those confronted with the news of someone they know or love being HIV-positive — especially obtained via a third-party. As recently as 2012, more than half of Americans still said they felt some discomfort with people with HIV/AIDS. See Henry J. Kaiser Family Foundation, The Washington Post/Henry J. Kaiser Family Foundation 2012 Survey of Americans on HIV/AIDS (July 2012)[4]. Any invasion and or disclosure of such information by Defendants was an invasion of Plaintiff's privacy, negligent on all accords, and failed fiduciary duty to protect such private health information.

**Fifth**, Defendants, in their motion to dismiss with Prejudice, goes to great lengths to avoid accountability for violating provision of the Americans with Disabilities Act as well as the Rehabilitation Act when disclosing Plaintiff disability, HIV-positive[5]. In-fact, the only real argument Defendant's make is the weak outdated argument that no employment relationship existed between Defendants and Plaintiff. That argument has been addressed herein.

The Americans with Disabilities Act (ADA) prohibits "covered entities", applicable here, from discriminating against individual with disabilities to include protection for their confidential health information related to such disability. The Defendants are "covered entities" within the meaning of the ADA, and in conjunction with Plaintiff's job offer terms of employment to provide health benefits Defendants, joint employers, were required to maintain and treat as confidential all of Plaintiff's private health information collected in conjunction with its inquiry for health insurance eligibility. Outside of the scope of employment, Defendants make no legal argument for the

---

[4] Available at http://kff.org/hivaids/poll-finding/2012-survey-of-americans-on-hivaids.

[5] As a governmental health plan, TEHW provides a comprehensive package of benefits that includes medical, prescription drug, dental, vision, life and accident coverage, and long-term and short-term disability insurance. https://tehw.org/about-us/

impermissible access and disclosure. Again, I ask the court to view this closely as the Court has ruled previously that Plaintiff's actual employer couldn't be held liable for such action. Given that, should this Court find that Defendants here are also not liable, who would be?

In past years, the confidentiality provision of ADA has generated some judicial discussion but none directly on point. In like manner, Defendants are making an argument behind another Court's decision that further muddies the water for Plaintiff should the Court rule in favor of Defendant's motion to dismiss in this action. Should the Court find that Defendants were joint employers, there is no question that all Defendants violated the ADA provision of the ADA as the language is very plainly articulated. Particularly, Defendants wagered no other argument outside of the employment related argument, therefore, up prevail, the Court has the obligation to allow such claims to move forward.

**Sixth**, Plaintiff has plausibly articulated Defendants' breach of contract and claim for unfair trade practices under MCPA. Here, Defendants are attempting to overshadow the facts of these claims against a 'play on words' in Plaintiff's *Pro Se* status at this time. Despite Defendants attempt to walk back their place within the marketplace, the sale of benefits resides as a service within the line of service offer by all Defendants. MetLife sells insurance products to TEHW that are then offered to eligible participants. These participants pay a premium to TEHW for their portion of any said premium by way of payroll deduction.

Defendants want to argue that Plaintiff has not engaged in certain acts of consumer trade given operational process of exchange in currency. In exchange for the "services" offered to eligible participants, TEHW offers its own guarantee for privacy when you agree to purchase benefits offered even when other independent options are available. Plaintiff plainly was offered a privacy guarantee with the benefits he purchased through TEHW and agreed to what he believed was

privacy and confidentially as advertised and stated in privacy agreements offered and posted within the business area of its establishment. Despite the offering, consent, and agreement, Defendants breach its stated and implied agreement when Defendant Berthat Villatoro disclosed Plaintiff's HIV-positive status against Plaintiff and Defendants' agreement without his consent.

Like manner, as a joint employer to the employees processing MetLife's transactions, MetLife maintains liability for their own contractual provision within their offering for privacy in conjunction with a service offered for trade as well. Here, Plaintiff argues that there is in-fact a contractual agreement to maintain his privacy and both MetLife and TEHW offered as part of their trade, to provide protection to Plaintiff's private medical information as part of the premiums paid by Plaintiff and Defendants breached those contracts when their agents impermissibly accessed and disclosed Plaintiff's HIV-positive status.

**Seventh**, lastly, Defendant TEHW, despite very clear citations and admissions, again seeks to walk away from liability of malicious prosecution. Not that it wasn't enough that Plaintiff's 20+-year secret of living HIV-positive was shattered, Defendant, TEHW, through its agents sought to further damage Plaintiff by maliciously prosecuting plaintiff.

Defendant TEHW points the Court to Tonya Jackson and Crystal Long's[6] charging documents as a pillar to non-impeachment. However, I would point to a few very important statements made under the penalty of perjury in contrast to the elements needed to sustain a claim for Malicious Prosecution charge in Maryland. For clarity of the record, I invite the court to examine **Exhibit 6**, Plaintiff's previous motion to dismiss. This motion was made AFTER the instant action where *Pro Se* Plaintiff was able to make contact with outside law enforcement for prosecution inquiry of the matter — preserving the Court's time and resources. However, Defendant TEHW seeks to paint a

---

[6] Plaintiff first interaction with Tonya Jackson and Crystal Long was on a zoom hearing on March 11, 2022; prior, Plaintiff had never met, seen, nor interacted in any way with either party.

picture to this Court that Plaintiff was somehow running away from the claim after then Defendants' motion for dismissal. That is far from the truth and the record refutes this itself.

When examining the criminal charge, (Harass; A COURSE OF CONDUCT | CR 3-803) you'll note specifically that in Maryland, in order for harassment to reach the level as a criminal offence, the facts and circumstances must show an unwillingness by the suspect to stop his/her actions after they were given a reasonable warning, or request to stop. Defendant TEHW, through its own agent's admissions, this never happened. In fact, you will note that in the charging documents **Exhibit 7**, Tonya Jackson's deposition transcript **Exhibit 8**, as well as Plaintiff's affidavit **Exhibit 9**, it is made very clear that at the time these malicious charges were made, neither Executive Director Tonya Jackson nor CFO Crystal Long had ever met Plaintiff let alone made any request to desist any continued harassment. In-fact, if you again examine **Exhibit 8**, you will note that Executive Director Tonya Jackson readily admits in her own words that there was discussion to harm Plaintiff by disclosing harmful information to his husband and as a lesser resort, an agreement was made to file charges against him.

Further, Defendant alleges that both Tonya Jackson and Crystal Long were acting in their individual personal capacities and not that of TEHW despite Defendant TEHW paying to defend the matter in County Court. Tonya Jackson admitted to Plaintiff, she was acting on behalf of TEHW. Tonya Jackson 1) represents herself to the court as Executive Director of TEHW, 2) attempts to make schedule accommodations for TEHW staff ("her staff"), 3) When asked by the court if she wanted to instruct Plaintiff to stay away from her home, she instructs the Court **"NO"** and when asked to instruct Plaintiff to stay away from her place of employment (TEHW), she instructs the Court **"YES"**. Further, I would advise the Court to take notice that this comes after Tonya Jackson's statement to the commissioner in the previously cited charging documents where she indicated she

was afraid for her personal safety as well as that of her children. One would think any person so afraid would ask the Court to keep an individual away from every area of their life, however keeping Plaintiff away from her home, where her family resides was ***rejected*** by Mrs. Jackson while the Executive Director focus this matter on of her place of employment. Additionally, Defendant TEHW, despite their fiduciary duty, wants this Court to believe or is willing to put on public record that the officers of TEHW authorized the use of thousands of dollars of the Fund's money for employees to handle their very own ***private legal matters***. An admission that would yield reportable regulatory and fiduciary concerns for the organization. While Defendant's, wanting to legitimize the malicious prosecution of Plaintiff, as an element of the claim, the criminal charges were dismissed "nolle prosequi" after abandonment of the charges by Plaintiff TEHW **Exhibit 10A-B**.

Defendant TEHW commenced criminal charges against Plaintiff, the charges totally lacked probable cause against Plaintiff, Tonya Jackson admits the charges were brought with malice and retaliation, and the charges ended favorably for Plaintiff despite the damages caused and9 continues to cause.

As a result of the malicious prosecution, Plaintiff sought to sell his family home in 2022 for $180,000, when the market was totally ripe for sellers. Plaintiff sought to move his family into an apartment home until he found a new home. When Plaintiff applied for the apartment home, Plaintiff was denied residency citing the criminal charges brought by Defendant TEHW and was forced to forgo the sale of the home since he had no place for his family to go.  Plaintiff again attempted to sell his home in 2024 and because the market value had decreased, as a result, Plaintiff was forced to sale the home for **$60,000** less than originally offered since he was unable to sale in 2022 due to staggering charges on his background prohibiting him for obtaining housing for his family. Plaintiff was again denied rental of an apartment home because of the malicious prosecution

and was forced to rent the apartment home in a family members' name. The malicious prosecution by Defendant TEHW irreparably harmed and damaged Plaintiff and his family directly and continues to harm Plaintiff.

### III.     Standard of Review

In considering a motion to dismiss for failure to state a claim, the court "must assume the truth of all well-pleaded relevant and material facts as well as all inferences that reasonably can be drawn therefrom. Dismissal is proper only if the alleged facts fail to state a cause of action." A.J. DeCoster Co. v. Westinghouse Elec. Corp., 333 Md. 245, 249 (1994). "[A]ny ambiguity or uncertainty in the allegations bearing on whether the complaint states a cause of action must be construed against the pleader." Sharrow v. State Farm Mutual, 306 Md. 754, 768 (1986); Cf., Berman v. Karvounis, 308 Md. 259, 263 (1987) ("what we consider are allegations of fact and inferences deducible from them, not merely conclusory charges."). In making its decision, "the court must view all well-pleaded facts and the inferences from those facts in a light most favorable to the plaintiff." Lloyd v. General Motors Corp., 397 Md. 108, 122 (2007); see also Hrehorovich Harbor Hospital Center, Inc., 93 Md. App. 772, 781 (1992). In short, dismissal is proper "only if the alleged facts and permissible inferences, so viewed, would, if proven, nonetheless fail to afford relief to the plaintiff." Arffa v. Martino, 404 Md. 364, 381 (2008) (quoting McNack v. State, 398 Md. 378, 388 (2007)). Whether to grant a motion to dismiss "depends solely on the adequacy of the plaintiff's complaint." Green v. H & R Block, Inc., 355 Md. 488, 501 (1999). The court's review of the pending motion in this case will be cabined to the four corners of the complaint, the documents appended to the complaint as exhibits and "those facts that may fairly be inferred from the matters expressly alleged." Bennett Heating & Air Conditioning v. NationsBank of Maryland, 342 Md. 169, 174 (1996).

## **CONCLUSION**

For the forgoing reasons, facts contained within Plaintiff's First Amended Complaint, and the entire record thus far, Plaintiff requests the Court deny Defendants' Motion(s) to Dismiss Plaintiff's First Amended Complaint with Prejudice in their entirety. Where applicable, grant Plaintiff Leave to further amend his Complaint with additional facts discovered in defending Defendants' motion to dismiss.

Dated: March 17, 2025                          Respectfully Submitted,

Barry Hobson
*Pro Se*
9016 Ruby Lockhart Blvd
Lanham, Maryland 20706
202.368.7269 (T)
Barry_Hobson@outlook.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2025, I caused a true copy of the foregoing Plaintiff's Combined Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint with Prejudice, Memorandum of Points and Authorities in Opposition to Defendant's Motion to Dismiss Plaintiff's First Amended Complaint with Prejudice, all Exhibits thereto, and proposed Order to be served via email and first class mail, postage prepaid, up the following:

Richard S. Siegal (CPF/AIS#0801030033)
SLEVIN & HART, P.C.
1300 Connecticut Avenue, N.W., Suite 700
Washington, DC  20036
Telephone: 202.797.8700
Facsimile: 202.234.8231
rsiegel@slevinhart.com

*Counsel for Defendants Transit Employees*
*Health and Welfare Fund and Bertha Villatoro*

Gail Westover, Esq. (Maryland Bar No. 13752)
Eversheds Southerland (US) LLP
700 Sixth Street, NW, Suite 700
Washington, DC 20001-3980
Telephone: 202.383.0100
Facsimile: 202.637.3593
gailwestover@eversheds-sutherland.com
jocelynweinstein@eversheds-sutherland.com

*Attorneys for Defendants Metropolitan Life Insurance Co.*

Respectfully Submitted,

Dated: March 17, 2025

Barry Hobson
9016 Ruby Lockhart Blvd
Lanham, Maryland 20706
Telephone: 202.368.72699
Barry_Hobson@outlook.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

BARRY HOBSON,

            *Plaintiff*,

    v.

Transit Employees Health & Welfare
Fund, LLC, *et al*.

           *Defendant*.

**Case No: 8:25-cv-00146-PX**

### ORDER

    Upon consideration of Defendant's, Transit Employees Health and Welfare Fund, LLC Bertha Villatoro, and Metropolitan Life Insurance Company's Motion to Dismiss With Prejudice, Plaintiff's Opposition thereto, and the entire record herein, it is:

    **ORDERED** that the Defendants Motion to Dismiss With Prejudice is **DENIED.**

Defendants shall file an answer to the Complaint by _____, 2025.

**ENTERED** this _____day of_____, 2025.

_____
Honorable Paula Xinis
U.S. District Court of Maryland