IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

BARRY HOBSON

    Plaintiff,

v.

TRANSIT EMPLOYEES HEALTH &
WELFARE FUND, LLC, *et al.*,

    Defendants.

Case No.: 8:25-cv-00146-PX

**MEMORANDUM OPINION**

    Pending are Defendants Transit Employees Health & Welfare Fund, LLC ("TEHW"), Metropolitan Life Insurance Company ("MetLife"), and Bertha Villatoro's motions to dismiss pro se Plaintiff Barry Hobson ("Hobson")'s Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 10 & 20. The motions are fully briefed, and no hearing is necessary. *See* D. Md. Loc. R. 105.6. For the following reasons, the motions are granted.

**I.    Background**

    In 2017, Hobson began working for the Amalgamated Transit Union, Local 689 ("Local 689") as an executive assistant. ECF No. 6 ¶¶ 21, 37 & 161. TEHW administered insurance benefits on behalf of Local 689 members. *Id.* ¶¶ 37–38. After nearly a year on the job, Hobson applied to TEHW for coverage through MetLife. *Id.* ¶¶ 39–40.

    MetLife's application form required Hobson to disclose whether he had been diagnosed or treated in the past for "Acquired Immunodeficiency Syndrome (AIDS), AIDS Related Complex (ARC), or Human Immunodeficiency Virus (HIV) Infection." ECF No. 6 ¶ 46. Because Hobson is HIV-positive, he answered "yes." *Id.* ¶ 47. Also, in connection with this application, TEHW

provided Hobson its "Notice of Privacy Practices" ("the Notice"). ECF Nos. 6 ¶ 134 & 6-1. The purpose of the Notice was to "describe[] how medical information about you may be disclosed and how you can get access to this information." ECF No. 6-1 at 2. The Notice explained that TEHW must, by law, take "reasonable steps to ensure the privacy of your personally identifiable health information in accordance with the privacy provisions contained in the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), as amended by the Health Information Technology for Economic and Clinical Health Act ("HITECH") and the Genetic Nondiscrimination Information Act ("GINA")." *Id.* The Notice further explained that TEHW must "send you this Notice," detailing the circumstances under which TEHW may disclose protected health information. *Id.* The Notice also informed Hobson that TEHW would not disclose any personal health information to anyone other than MetLife absent Hobson's express written consent. ECF No. 6 ¶¶ 133–134.

Several years later in 2021, TEHW employee Bertha Villatoro ("Villatoro") accessed Hobson's MetLife application, learned of Hobson's HIV status, and shared it with TEHW's Chief Financial Officer Crystal Long ("Long") and Executive Director Tonya Jackson. ECF No. 6 ¶¶ 48 & 50–53. Because Tonya Jackson is also TEHW's privacy officer, she, in turn, reported Villatoro's unauthorized access of Hobson's application to TEHW's Board of Trustees. *Id.* ¶¶ 54–57. However, in doing so, she further disclosed Hobson's HIV status to the board members. *Id.* Trustee Raymond Jackson[1] also shared the information with another Local 689 employee, Brandon Godwin. *Id.* ¶ 58.

Next, for reasons not altogether clear, Long and Tonya Jackson filed "criminal harassment" charges against Hobson on March 9, 2022, in the District Court for Prince George's County. ECF

---

[1] To avoid confusion, the Court will refer to Tonya Jackson and Raymond Jackson using their full names throughout.

No. 6 ¶¶ 78–80.  Long and Tonya Jackson misrepresented to the District Court that Hobson had been previously warned not to contact them, which caused the court to "elevate" the charges from a civil peace order to criminal harassment.  *Id.* at 18 n.8.  Ultimately, the charges were dropped.[2] *Id.* ¶ 87.

About a year later on June 30, 2023, Villatoro sent an email to the entire 32-member executive board of Local 689, again disclosing Hobson's HIV status.  ECF No. 6 ¶¶ 64–66.  At that point, several TEHW and Local 689 employees heard that Hobson was HIV-positive, and from late 2023 until the time that Hobson filed this lawsuit, Hobson received multiple calls and texts from individuals alerting him that his private health information had been the subject of office gossip.  *Id.* ¶¶ 66–71 & 73–75.  Until that point, Hobson had kept his HIV status private for more than twenty years; only his spouse and immediate family knew of his condition.  *See id.* ¶¶ 8–11 & 36.

Hobson initially filed several state court actions against Local 689, some of which were consolidated and removed to this Court.  *See Hobson v. Loc. 689, Amalgamated Transit Union, AFL-CIO* ("*Hobson I*"), 8:23-cv-02405-TDC, ECF No. 3.  In *Hobson I*, Hobson alleged, among other claims,[3] that Villatoro and Raymond Jackson's disclosures of his HIV status constituted the tort of invasion of privacy.  *Id.* at 37.  Prior to removal, *Hobson I* proceeded to discovery on the circumstances surrounding the dissemination of his HIV status.  *See Hobson I*, 8:23-cv-02405-TDC, ECF No. 26 at 2 (describing that Villatoro obtained knowledge of Hobson's HIV-positive status from the MetLife application in Hobson's TEHW files and disclosed thereafter).

---

[2] The charges were "nolled" which reflects the state's decision not to pursue criminal prosecution.  *See* MD. CODE ANN., Nolle Prosequi, § 4-247.
[3] *Hobson I* also involved claims of employment discrimination, retaliation, disability discrimination, breach of contract, and wage violations.  *Hobson I*, 8:23-cv-02405-TDC, ECF No. 26 at 3.

3

On March 11, 2024, the Court granted summary judgment in favor of Local 689 on the invasion of privacy claim. *Hobson I*, 8:23-cv-02405-TDC, ECF No. 26 at 11. Hobson never appealed the adverse judgment and settled the remaining claims on September 18, 2024. *Hobson I*, 8:23-cv-02405-TDC, ECF No. 63.

On October 16, 2024, Hobson filed a separate suit in the Circuit Court for Prince George's County against TEHW, Villatoro, and MetLife which was timely removed to this Court. ECF No. 1-2. Defendants next moved to dismiss the Complaint, ECF No. 5, prompting Hobson to amend the pleading as a matter of right.[4] ECF No. 6. The Amended Complaint alleges against all Defendants invasion of privacy (Count I), breach of contract (Count III), negligence (Count IV), and negligence per se (Count V), as well as violations of the Maryland Consumer Protection Act ("MCPA"), MD. CODE ANN., Com. Law § 13-104, (Count VI), the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.*, ("ADA") (Count VII), and the Rehabilitation Act, 29 U.S.C. § 791, *et seq.*, (Count VIII). ECF No. 6. In Count II, Hobson alleges malicious prosecution solely against TEHW. *Id.*

Defendants now move to dismiss the Amended Complaint. ECF Nos. 10 & 20. The Court turns first to MetLife's motion and next to TEHW and Villatoro's motion.

## II.   Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). The Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences most favorably to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief

---

[4] Defendants TEHW and Villatoro's motion to dismiss the original Complaint at ECF No. 5 is thus denied as moot.

4

above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). The Court must be able to deduce "more than the mere possibility of misconduct"; the complaint facts must demonstrate that the plaintiff is entitled to relief. *See Ruffin v. Lockheed Martin Corp.*, 126 F. Supp. 3d 521, 526 (D. Md. 2015) (quoting *Iqbal*, 556 U.S. at 679), *aff'd in relevant part*, 659 F. App'x 744 (4th Cir. 2016).

Because Hobson proceeds pro se, the Court must read his pleadings charitably and let all potentially viable claims proceed on the merits. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). But "even a *pro se* complaint must be dismissed if it does not allege a 'plausible claim for relief.'" *Forquer v. Schlee*, No. CIV.A. RDB-12-969, 2012 WL 6087491, at *3 (D. Md. Dec. 4, 2012) (quoting *Iqbal*, 556 U.S. at 679). A complaint must "permit the court to infer more than the mere possibility of misconduct based upon its judicial experience and common sense." *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679) (internal quotation marks and alterations omitted).

At the Rule 12(b)(6) stage, the Court generally may not consider extrinsic evidence. *Zak v. Chelsea Therapeutics, Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015) ("Consideration of extrinsic documents by a court during the pleading stage of litigation improperly converts the motion to dismiss into a motion for summary judgment."). However, the Court may consider documents attached to pleadings if "integral to and explicitly relied on in the complaint" and the plaintiff does not challenge the documents' authenticity. *Id.* at 606–07 (quoting *Phillips v. LCI Int'l, Inc.*, 190 F.3d 609, 618 (4th Cir. 1999)).

**III.    Analysis**

### A. MetLife's Motion to Dismiss

MetLife principally argues that the claims against it must be dismissed as filed beyond the applicable statute of limitations. ECF No. 20-1 at 15. Under Maryland law, "[a] civil action at law shall be filed within three years from the date it accrues," unless another limitations period is specifically provided. MD. CODE ANN., Cts. & Jud. Proc. § 5-101 (amended by Maryland Laws Ch. 693 (H.B. 268)). The same limitations period applies to the statutory claims. *See Semenova v. Md. Transit Auth.*, 854 F.3d 564, 567 (4th Cir. 2017) (applying three-year statute of limitations to ADA and Rehabilitation Act claims). A claim accrues "on the date when the plaintiff knew or, with due diligence, reasonably should have known of the wrong." *Supik v. Bodie, Nagle, Dolina, Smith & Hobbs, P.A*, 834 A.2d 170, 178 (Md. Ct. Spec. App. 2003) (quoting *Doe v. Archdiocese of Washington*, 689 A.2d 634, 634 (Md. Ct. Spec. App. 1997)). Where a complaint on its face shows that the claims accrued outside the limitations period, dismissal is appropriate. *See Doe v. Maskell*, 679 A.2d 1087, 1090 (Md. 1996) (advising that "to permit a forgetful plaintiff to maintain an action would vitiate the statute of limitations and deny repose for all defendants"); *see also Lumsden v. Design Tech Builders, Inc.*, 749 A.2d 796, 803 (Md. 2000).

MetLife specifically contends that the only conduct plausibly attributable to it took place in 2018 when Hobson submitted his life insurance application. ECF No. 20-1 at 16. *See also* ECF No. 6 ¶¶ 41–42. Hobson fails to respond to this argument, thus conceding its veracity. *See* ECF No. 22; *see also McRae v. Westcor Land Title Ins*, 8:16-cv-2332 RWT, 2017 WL 1239682, at *3 (D. Md. Mar. 17, 2017) (plaintiff conceded limitations defense by failing to address it). And likely for good reason. When viewing the complaint facts most charitably to Hobson, MetLife was not involved on any matter related to Hobson's causes of action after his initial application in 2018. Indeed, the only allegation involving MetLife's representative, Sonja Jones, states that she was *on*

6

*leave* when Villatoro improperly accessed Hobson's file. ECF No. 6 ¶ 48. Because MetLife had not been involved with this matter such that any claim could be considered timely, any potential claims against MetLife accrued in 2018. Hobson did not file suit until roughly six years later on October 16, 2024, well beyond the limitations period. Therefore, all claims against MetLife are dismissed as time barred.

The Court next turns to Defendants TEHW and Villatoro's motion.

### B. TEHW and Villatoro's Motion to Dismiss

For each cause of action, TEHW and Villatoro maintain that the claims fail as a matter of law. ECF No. 10. The Court considers each count separately.

#### i. Invasion of Privacy (Count I)

The Amended Complaint avers that TEHW and Villatoro invaded Hobson's privacy interests by obtaining and disclosing his HIV-positive status to at least 34 people by word of mouth and by email, to the six-member TEHW Board of Trustees, and to 25 to 30 other TEHW employees. ECF No. 6 ¶¶ 52–53, 56, 58, 64–66 & 73–75. To survive challenge, an invasion of privacy claim must make plausible that (1) the defendant gave publicity to private information; (2) the publicized information would be highly offensive to a reasonable person; and (3) the matter is not of legitimate public concern. *Hollander v. Lubow*, 351 A.2d 421, 425 (Md. 1976); *Furman v. Sheppard*, 744 A.2d 583, 588 (Md. Ct. Spec. App. 2000); Restatement (Second) of Torts § 652D (1977). "Publicity" requires that "[t]he disclosure of the private facts must be a public disclosure and not a private one." *Hollander*, 351 A.2d at 425. Moreover, "the matter is made public by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." Restatement (Second) of Torts § 652D cmt. a (1977).

TEHW and Villatoro contend that because this Court previously granted summary judgment in Local 689's favor on whether the same disclosures amounted to "publicity," Hobson is collaterally estopped from pursuing the claim in this case. ECF No. 10-1 at 10 & 13–18. *See also Hobson I*, 8:23-cv-02405-TDC, ECF No. 26 at 11 (concluding that Villatoro's disclosure of Hobsons's HIV status, even to a large group of employees of Local 689 and TEHW, failed to meet the publicity element of an invasion of privacy claim). The doctrine of collateral estoppel concerns the "implications of the earlier litigation of a different case." *Colandrea v. Wilde Lake Community Ass'n, Inc.*, 761 A.2d 899, 909 (Md. 2000). "Applying collateral estoppel 'forecloses the relitigation of issues of fact or law that are identical to issues which have been determined and necessarily decided in prior litigation in which the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate.'" *In re Microsoft Corp. Antitrust Litig.*, 355 F.3d 322, 326 (4th Cir. 2004) (quoting *Sedlack v. Braswell Servs. Grp., Inc.*, 134 F.3d 219, 224 (4th Cir. 1998)) (internal brackets omitted). For the doctrine of collateral estoppel to apply, the movant must establish that (1) as part of a prior final judgment, the previously litigated issue is identical to the one raised in the new case; (2) the issue was actually resolved in the prior proceeding; (3) the issue was critical and necessary to the judgment in the prior proceeding; and (4) the party foreclosed by the earlier resolution of the issue had a full and fair opportunity to litigate the issue in the prior proceeding. *Id. See also E. Assoc. Coal Co. v. Dir., Off. of Worker's Comp. Programs*, 578 F. App'x 165, 173 (4th Cir. 2014) (per curiam); *Polk v. Montgomery Cnty.*, 782 F.2d 1196, 1201 (4th Cir. 1986). The Court considers each factor separately.

First, the *Hobson I* Court granted judgment in Local 689's favor because the identical disclosures did not satisfy the "publicity" element of the claim. *Hobson I*, 8:23-cv-02405-TDC, ECF No. 26 at 11. Second, the question of "publicity" remained central to finding in Local 689's

favor. Third, the judgment became final when Hobson failed to appeal it. Last, Hobson was given a full and fair opportunity to litigate the issue in the prior proceeding. *See S.E.C. v. Resnick*, 604 F. Supp. 2d 773, 780 (D. Md. 2009). Indeed, Hobson only brought the claim in this case after losing at the summary judgment stage in *Hobson I*. Accordingly, Hobson is estopped from relitigating the adverse "publicity" issue here.

Alternatively, even if the Court considered the sufficiency of the claim apart from the estoppel question, Hobson has not averred that the disclosures were made sufficiently public to sustain the claim. "Publicity" for purposes of the tort, must involve more than seriatim disclosure to a limited circle of people. *See Hobson I*, 8:23-cv-02405-TDC, ECF No. 26 at 9–10 (citing the Restatement (Second) of Torts § 652D cmt. a (1977)). That is, some facts must make plausible that the defendant engaged in "public communication," including but not limited to, disclosing the private information in a newspaper or a magazine, "a handbill distributed to a larger number of persons," or a "broadcast" or statement addressed to a "large audience." *Id.* at 10.

When viewing the Amended Complaint facts most favorably to Hobson, his HIV status had not been disseminated publicly. Villatoro disclosed the information to Long and Tonya Jackson. ECF No. 6 ¶¶ 48, 50 & 53. Tonya Jackson, in turn, disclosed it to the six-member TEHW Board of Trustees. *Id.* ¶¶ 56 & 62. Trustee Raymond Jackson, next disclosed the information to a third individual, Brandon Godwin. *Id.* ¶ 59. Lastly, an email had been circulated to the Local 689 32-member Board which shared Hobson's status in the context of imminent litigation. *Id.* The disclosures essentially went no further than Local 689. This is not enough to make plausible the claim. For this reason, the invasion of privacy claim fails as a matter of law and is dismissed.

    ii.  **Malicious Prosecution (Count II)**

Turning to the malicious prosecution allegation, the Amended Complaint faults TEHW employees Tonya Jackson and Long for filing baseless criminal harassment charges against Hobson. ECF No. 6 ¶ 119. The claim must plausibly aver that (1) the defendant instituted or continued a criminal proceeding against the plaintiff, (2) without probable cause, (3) with malice or an improper motive; and (4) the proceeding terminated in the plaintiff's favor. *Head v. Rakowski*, 695 F. Supp. 3d 663, 687 (D. Md. 2023); *Heron v. Strader*, 761 A.2d 56, 59 (Md. 2000).

As to the only named Defendant in this Count, TEHW, the claim fails because TEHW never brought criminal charges against Hobson. To the extent Hobson intended to sue Tonya Jackson and Long individually, or contends that TEHW is somehow vicariously liable for its employees' bad acts, the Amended Complaint at best makes plausible that Tonya Jackson and Long filed criminal harassment charges that were eventually dropped. ECF No. 6 ¶¶ 78 & 86. Nothing suggests that Tonya Jackson and Long had pursued the case in the absence of probable cause, or with the requisite malice or improper motive. Simply because the State's Attorney dropped the charges does not allow for the plausible inference of any nefarious motive for bringing them. Thus, without more, the claim fails. Count II is dismissed.

### iii.   Breach of Contract (Count III)

Next, the Amended Complaint avers that TEHW and Villatoro breached some non-specific "contract" it had with Hobson when Villatoro disclosed his HIV status. ECF No. 6 ¶¶ 131–138. For a breach of contract claim to proceed, some facts must make plausible the existence of a contractual obligation that was breached. *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001). TEHW and Villatoro principally argue that because no contractual obligation existed with Hobson, the Amended Complaint cannot make plausible the claim. ECF No. 10-1 at 20.

In Maryland, a contractual obligation is "a promise or set of promises for breach of which the law gives a remedy or the performance of which the law in some way recognizes as a duty." *Allegis Group, Inc. v. Bero*, 689 F. Supp. 3d 81, 115 (D. Md. 2023) (quoting Restatement (Second) of Contracts § 1 (1981)). A legally enforceable contract exists where it is "supported by mutual assent manifested by (1) an intent to be bound, and (2) definiteness of terms, as well as (3) consideration." *Nouri v. Dadgar*, 226 A.3d 797, 820 (Md. Ct. Spec. App. 2020) (quoting *Falls Garden Condo. Ass'n v. Falls Homeowners Ass'n*, 107 A.3d 1183, 1190 (Md. 2015)) (internal quotation marks omitted). Consideration "may be established by showing a benefit to the promisor or a detriment to the promisee." *Lillian C. Blentlinger, LLC v. Cleanwater Linganore*, 173 A.3d 549, 566 (Md. 2017).

When viewing the Amended Complaint most favorably to Hobson, he has not pleaded the existence of a valid and binding contract between himself and either TEHW or Villatoro. Hobson's liability theory rests on Defendants' obligation not to disclose Hobson's protected health information. ECF No. 6 ¶¶ 135–136. But this obligation was one grounded in statute, HIPAA, not contract. Neither Villatoro nor TEHW promised as part of a contractual obligation to Hobson not to disclose his health status. *Id.* ¶¶ 132–136. Rather, the Notice, read most favorably to Hobson, simply informs the insurance applicant of TEHW's statutory obligation to protect private health information and TEHW's intent to comply with the same. ECF No. 6-1 at 2, 4. *Cf. In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 484 (D. Md. 2020) (mutual assent reflected in plain language of agreement, which stated "by using the services, you agree to the terms and conditions of this Privacy Statement."). Because the Amended Complaint fails to plead the existence of a legally binding contract between the parties, the breach of contract claim fails as a matter of law and must be dismissed.

11

### iv.     Negligence (Count IV)

Next, Hobson asserts that TEHW and Villatoro acted negligently when they failed to protect, and in fact disseminated, his highly personal medical information.  ECF No. 6 ¶¶ 140–145.  To survive challenge, a negligence claim must make plausible that (1) the defendant owed plaintiff a duty of care; (2) the defendant breached that duty; and (3) the breach proximately caused plaintiff harm.  *Valentine v. On Target, Inc.*, 727 A.2d 947, 949 (Md. 1999).  Where a plaintiff alleges as damages solely emotional injury, he cannot recover in negligence unless "the emotional distress is accompanied by physical harm or is otherwise objectively determinable."  *Coleman v. Immaculate Heart of Mary Sch.*, Civ. No. CCB-11-02917, 2012 WL 75323, at *1 (D. Md. Jan. 9, 2012) (noting that where the only injury is emotional and there is no physical manifestation, the negligence claim must be dismissed).  Moreover, the injury suffered must be actual; potential or increased risk of harm in the future, absent an objective measure of likelihood, is too speculative to sustain the claim.  *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 291–93 (Md. 2007).

Hobson avers solely that because of "Defendants' negligence and/or negligent handling," he has "suffered or will suffer damages, including embarrassment, humiliation, frustration, anxiety, emotional distress, and fear" alongside an "increased risk" of being denied housing and jobs.  ECF No. 6 ¶ 145.  The allegations are too vague and conclusory to "raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555 (internal citations and alterations omitted).  Thus, the negligence claim fails.  *See Coleman*, 2012 WL 75323, at *1.

### v.     Negligence Per Se (Count V)

Count V avers that Defendants TEHW and Villatoro committed "negligence per se," because they violated HIPAA and "Maryland law" by disclosing Hobson's HIV status without

permission.  ECF No. 6 ¶¶ 146–151.  Maryland does not recognize "negligence per se" as a standalone claim.  *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, Civ. No. JPB-19-2879, 2020 WL 6290670, at *9 (D. Md. Oct. 27, 2020) (citing *Kiriakos v. Phillips*, 139 A.3d 1006, 1016 (Md. 2016)).  Rather, a plaintiff may look to defendant's violation of a statute or ordinance to help establish the breach of defendant's duty owed to plaintiff as part of a negligence action.  *Id.*  To make such an allegation plausible, the plaintiff must aver he is a member of a specific class of people that the statute is designed to protect, and that the defendant's violation of the statute caused the plaintiff's injury.  *Id.*

The Amended Complaint merely avers that violation of HIPAA sustains the claim.  The bare allegation is insufficient.  Moreover, because HIPAA precludes a private right of action in this very context, a plaintiff cannot circumvent HIPAA's statutory bar by bringing a companion negligence action based on the same violation.  *Dunbar v. Biedlingmaier*, Civ. No. DKC-20-0738, 2021 WL 3129310, at *4 (D. Md. July 23, 2021) (relying on *Skinner v. Tel-Drug, Inc.*, No. CV-16-00236-TUC-JGZ, 2017 WL 1076376, at *3 (D. Ariz. Jan. 27, 2017)) (quoting *Sheldon v. Kettering Health Network*, 40 N.E.3d 661, 674 (Ohio Ct. App. 2015)).  For these reasons, the negligence per se claim must be dismissed.

      vi.    **Maryland Consumer Protection Act (Count VI)**

Count VI avers that Defendants violated the MCPA by falsely representing that they would keep confidential Hobson's medical history in connection with his purchase of health insurance.  ECF No. 6 ¶¶ 153–156.  The MCPA prohibits unfair or deceptive trade practices "in the sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services."  MD. CODE ANN., Com. Law § 13-301.  However, liability under the statute attaches only if the deceptive

conduct occurs during the "sale or offer for sale to the consumer." *Morris v. Osmose Wood Preserving*, 667 A.2d 624, 636 (Md. 1995).

When viewing the alleged facts most favorably to Hobson, neither TEHW nor Villatoro "sold" to Hobson the relevant insurance policy, MetLife did. TEHW and Villatoro instead administered the plan on behalf of Local 689. ECF No. 6 ¶ 25 (TEHW "administered" the "employee-sponsored insurance"). *See also id.* ¶ 37. Accordingly, nothing makes plausible that any of Defendants' supposed misrepresentations were made in connection with the "sale" or "offer for sale" of anything. Thus, the MCPA claims against TEHW and Villatoro are dismissed.

### vii. ADA and Rehabilitation Act (Counts VII and VIII)

Last, the Amended Complaint avers that TEHW and Villatoro engaged in "unlawful employment practices" by sharing his HIV status with others and without his permission, in violation of Title I of the ADA and the Rehabilitation Act. ECF No. 6 ¶¶ 157–180. The ADA prohibits an employer from discriminating against a disabled employee on account of his disability. *See* 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."); *see also Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 579 (4th Cir. 2015). The ADA more particularly prohibits an employer's disclosure of its employee's protected health information in certain circumstances. 42 U.S.C. § 12112(d)(3)(B). Defendants, however, did not employ Hobson, Local 689 did. And no facts suggest that TEHW's role as the plan administrator for the union somehow transformed it into Hobson's "employer" for purposes of the ADA. ECF No. 22 at 3. *Cf. Salinas v. Com. Interiors, Inc.*, 848 F.3d 125, 141 (4th Cir. 2017)

(joint employers share the power to direct, control, or supervise employee). The ADA claim, therefore, fails for this reason alone.[5] Count VII is dismissed.

The Rehabilitation Act allegation, Count VIII, fails for a more fundamental reason. Although the Rehabilitation Act can extend protections against discrimination outside the employment context, the Amended Complaint fails to offer any plausible theory of liability under the Act. The pleading merely states that "Defendants improperly disclosed Plaintiff's privileged and confidential medical information to individuals without a need to know without Plaintiff's consent in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq." ECF No. 6 ¶ 179. This barebones assertion alone cannot suffice. This claim, too, is dismissed.

## IV. Dismissal With or Without Prejudice

This Court retains broad discretion to dismiss claims with or without prejudice. *Weigel v. Maryland*, 950 F. Supp. 2d 811, 826 (D. Md. 2013) (citing *180s, Inc. v. Gordini U.S.A., Inc.*, 602 F. Supp. 2d 635, 638–39 (D. Md. 2009)). Generally, dismissal without prejudice is appropriate when the plaintiff has not had an opportunity to amend the complaint. *King v. Rubenstein*, 825 F.3d 206, 225 (4th Cir. 2016). However, dismissal with prejudice is warranted where the plaintiff amended the pleading and the defects nonetheless remain, *see U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008), or where the claim is so hopelessly flawed that no amount of amendment could cure the pleading defects. *See Cozzarelli v. Inspire Pharms., Inc.*, 549 F.3d 618, 630 (4th Cir. 2008) (no abuse of discretion in dismissing complaint with prejudice where "amendment would be futile in light of the fundamental deficiencies in plaintiffs' theory of liability"); *see also Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995); *Foy v Giant Food*

---

[5] As for Villatoro, the claim separately cannot proceed because violation of the ADA lies solely against the employer, not individuals who work for the employer. *See Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999).

*Inc.*, 298 F.3d 284, 291 (4th Cir. 2002) (dismissal with prejudice proper where claims clearly are time-barred from the face of the complaint).

Hobson has previously litigated identical issues after engaging in formal discovery with Local 689.  *See Hobson I*, 8:23-cv-02405-TDC, ECF No. 3.  Hobson also has amended his complaint once in this case in response to Defendants' original motion to dismiss.  ECF Nos. 5 & 6. Nonetheless, Hobson still cannot articulate a plausible claim.  Allowing amendment under these circumstances would unnecessarily prolong the expense of fruitless litigation and amount to an exercise in futility.  Thus, the claims are dismissed with prejudice.

## V.    Conclusion

For the reasons discussed above, the motions to dismiss are GRANTED.  The Amended Complaint is dismissed with prejudice.  A separate Order follows.

<u>8/25/2025         </u>  
Date

<u>           /s/          </u>  
Paula Xinis  
United States District Judge